THE PEOPLE, Plaintiffs in Error, *v.* JOHN BRANSBY, Defendant in Error.

A criminal conviction for an assault cannot be sustained where no battery has been committed and none attempted, intended or threatened by the party accused. It is indispensable to the offense that violence to the person be either offered, menaced or designed.

There is no exception to this rule in the case of an indignity offered to a female, where she is a consenting party to an act involving her own dishonor.

In a court of review, the charge of a judge on the trial should be interpreted in the light of the evidence, and in accordance with the ordinary and popular import of the language, as it would naturally be understood by the jury.

An erroneous instruction by the presiding judge will not authorize the reversal of a judgment, where it appears from the form of the finding, as matter of legal necessity, that the error did not affect the result and wrought no actual prejudice to the party.

THE defendant in error·was indicted for an assault and battery on Ida Klube. He was convicted by the Onondaga Court of Sessions, and sentenced to imprisonment for one year and a fine of $250.

At the time of the trial another indictment was pending in the Court of Oyer and Terminer, charging him with the same transaction as a rape.

The accused was a hackman in Syracuse. He had pursued his calling in that city for over twenty years, and had always sustained a good character.

The complainant was a native of Ardennes, in Prussia. She was twenty-three years of age, and claimed that she understood but two words of English, the words "hotel" and "sleep." The evidence, as to the extent of her acquaintance with the language, was conflicting.

She had recently arrived in the country, and at the time of the occurrence in question, she was on her way by railroad to Geneva. She had no personal attendant, but was traveling with other Germans in the emigrant train. They arrived at Syracuse on the 4th of August, 1863, between 10 and 11 o'clock at night. She had a through ticket, and remained in the room of the depot to which she was conducted by an

officer of the road, as she intended to go on with the next emigrant train at six o'clock in the morning.

About an hour after midnight, Rosenkrans, the night watchman, ordered all others out, but after examining her ticket, permitted her to remain. He soon after went out, according to his own account of the matter, and when he returned she was gone.

She testified that after the others were ordered away, the accused came in, walked up and down the room and talked with Rosenkrans; that he came up to her and said something which she did not understand, except the words " hotel " and " sleep ;" that he took her satchel and motioned to her to follow; that she went with him to the Sherman House, and that he took her first to the sitting room; that afterwards he and the porter, who carried the light, accompanied her to her room, which seems to have been on the principal hall of the third floor; that he remained with her in the room when the servant left; that he soon stepped out for a few moments, and that during his absence she took off her shawl and remained seated until his return; that when he came back, he locked the door, put the key in his pocket, and offered her a glass containing liquor, which proved to be sherry wine; that she tasted but did not drink it; that he motioned to the bed and spoke something about sleep, which she did not understand; that she opened her dress behind, as the weather was hot, but continued sitting in her chair; that he undressed before her, went to bed, and then extinguished the light; that she was fatigued and fell asleep; that when she woke he was carrying her to the bed; that she struggled with her feet all she could, but was almost smothered by the weight of his person; that he had connection with her, and she then returned to the chair; that she remained there crying for about fifteen minutes, when the same thing was repeated, with the same struggles on her part; that he then dressed himself and went out, and that he neither paid her or offered her money.

On her cross-examination, she admitted, in answer to inquiries which she appeared to resent, that she once before had

illicit connection with another, but it was a suitor in her own country to whom she was at the time affianced. She also admitted that she said nothing to the defendant when he put his arm round her neck; that about the time he left she washed herself; that she went in the morning from the room to the cars; that she was not asked to pay for her lodging; that she did not at once disclose the facts; that she denied them at first, when interrogated in the morning at the cars as to whether she stayed with him; that she did so from an apprehension that she might still be in his power, but upon being assured of protection, she communicated them immediately after to her German friends.

Evidence was given by the defendant tending to show that there was no disorder in the apartment indicative of any struggle or resistance; that she made statements the following morning inconsistent with the truth of the accusation; that she had more acquaintance with the English language than she professed; and that the accused himself had always borne a good character.

The county judge charged, among other things, as follows: " If the jury thinks that the defendant took this girl up into the room, and locked himself in with her, with intent to have connection with her, she being ignorant of that intent on his part, then *he is guilty of an assault, although she may have afterwards assented to his wishes and to his having connection with her.*" Other portions of the charge are sufficiently stated in the opinion.

The jury found the defendant guilty of the "assault and battery " charged in the indictment.

The conviction was reversed and a new trial ordered by the Supreme Court, and a writ of error was brought in behalf of the people.

*W. H. Gifford*, district attorney, for the People.

1. The jury found the defendant guilty of an assault and battery, and the verdict is fully sustained by the evidence. There is no circumstance or testimony from which it can be reasonably inferred that she so assented to the defendant's

conduct as to excuse it and acquit him of the charge of assault and battery.

Any assent on her part is negatived by the testimony that she struggled all she could; that she was asleep when defendant first seized her; also, she was an entire stranger to him; received no pay from him; and was not a prostitute.

2. The second and third branches of the judge's charge contáin no such error as requires, or even warrants the reversal of the judgment and the granting of a new trial.

It is evident that the charge, in the second branch thereof, did not mean, nor was it so understood, that the defendant was guilty of an assault and battery if he had committed a rape.

The third branch — considered in connection with the testimony, as it must be (*People* v. *Scott*, 6 Mich., 287), and construed with reference to the facts of the case — is based upon the fact that the defendant wrongfully and fraudulently, as to the complainant, took advantage of his own privilege in the railroad company's passenger sitting room, and of her situation there, she then being an ignorant and inexperienced young girl, just from Ardennes, wholly unacquainted with the English language, and reasonably believing it to be her duty to follow the defendant, who really appeared to have authority in the premises.

Under these circumstances it is submitted that when he locked the door, put the key in his pocket, and thus falsely imprisoned her, putting her within his reach and power and under his control to outrage her person, as he then proceeded to do; that he thereby assaulted her, the same as though he were pursuing another in a threatening attitude with intent to strike and within striking distance. (See Buller's N. P., p. 22 [Imprisonment]; *Martin* v. *Sheppee*, 3 Car. & P., 373; *Smith* v. *State*, 7 Humph., 43.)

It was taking such an advantage of his situation and of her comparatively defenseless condition as is holden to be an assault and battery, or an assault. (See *Hayes* v. *The People*, 1 Hill, 35; *Rex* v. *Nichol*, 1 Br. Cro. Cas., R. & R., 130;

*Regina* v. *Case*, 1 Eng. L. & Eq., 544 ; *Long* v. *Rogers*, 17 Ala., 540.)

From the verdict rendered it is evident that the jury were not misled by the charge in respect to the assault alone, for they rendered a verdict for an assault and battery.

So if there is error in either or both branches of the judge's charge, this court will disregard it where it is evident, on looking through the case, that the defendant could not have been injured by such charge. The verdict in no way arises out of such charge, nor could it have been influenced by it; and because the verdict rendered is abundantly sustained by the evidence.

When the motion to quash was made, the court properly overruled it, so far as the question of merger was concerned; for, in the absence of proof, it could not be determined that the prisoner had committed the greater offense into which the one for which he was put upon trial had merged. It is not the right of the prisoner to screen himself from a conviction for a less offense, by simply claiming that he has committed a greater one, into which the lesser is merged.

*Sedgwick, Andrews & Kennedy*, for the defendant in error.

PORTER, J.   The testimony of the complainant was artless, frank and ingenuous. There is an air of apparent truth in her narration which strongly commends it to belief. If it is entitled to full credit, the accused was guilty of a criminal and brutal outrage. Her evidence did not establish a case of rape, but it tended to show a very aggravated assault. The only difficulty in sustaining the conviction arises from an erroneous instruction by the presiding judge, that on a state of facts which he assumed to be deducible from the evidence, the defendant must be found guilty of an assault, even if the jury should arrive at the conclusion that the illicit intercourse was with the assent of the prosecutrix.  ·

Though the probabilities are against it, it is not impossible that this may have been their conclusion from the evidence; and the judgment was, therefore, properly reversed, unless

we are at liberty to infer that the accused was not prejudiced by the erroneous instruction, which related strictly to the crime of *assault*, as distinguished from the *assault and battery* of which he was found guilty.

There was some conflict between the testimony of the complainant and that of the defendant's witnesses. The jury were perhaps at liberty to draw unfavorable inferences from her leaving a place of security, at a late hour of the night, in company with a perfect stranger, whose language she neither understood nor spoke; from her following him a considerable distance, and availing herself of the room he provided at the Sherman House, without indicating any objection to his occupying it with her, when his purpose would seem to have been unmistakable; from her permitting the porter to leave the hall while he remained after midnight in her apartment; from her making no outcry at the time of his repeated connections with her, such as might have been heard by the inmates of the adjoining rooms; and from her denial on the following morning that he had abused her, when she was first interrogated by her countrymen in the German language, and in the absence of the accused. Her explanation of these facts may or may not have been satisfactory to the jury. If it was, an error in the charge, as to the hypothetical effect of assent to the illicit intercourse, would be immaterial. But if her explanation was unsatisfactory to the jury, as the judge assumed it might be upon the evidence, it is the right of the accused to demand our judgment on the correctness of the instructions under which he was convicted, and on the further question whether the error, if any, may have tended to his prejudice in the ultimate result.

It is insisted by the counsel for the accused that the first two propositions in the charge amounted, in substance, to an instruction that if the evidence established a rape, the jury were authorized to find him guilty of the mere misdemeanor charged in the indictment. It is true that the words used were sufficiently vague and general to give some plausibility to the proposition. But the language of the charge is to be construed in the light of the evidence to which it was applied.

The instruction should be read by us as it would be understood by the jury; and as it is manifest that the testimony of the prosecutrix did not establish a case of rape, but did establish reluctance and some degree of resistance, the language employed should be applied to the facts presented, and not to a hypothetical state of facts in which it might have tended to mislead the jury. There was no error in this portion of the charge, if it be fairly construed, as it was evidently intended by the judge, and as it could not fail to be understood by those who had heard the evidence.

The third proposition of the judge presents a question of a much more serious character. It assumes that she assented to the illicit intercourse and makes the issue of guilt or innocence depend on the question when she first became aware of his purpose to ask the boon she granted. The jury were instructed, as matter of law, that if the defendant took her into the room and locked himself in with her, *with intent* to have connection with her, she being ignorant of his intent, then he is guilty of an assault, although she may have afterwards assented to his wishes, and to his having connection with her. The Supreme Court was right in holding that this was a manifest legal error.

It is suggested that the instruction might be sustained on the theory that, though the complainant consented to the material point of illicit intercourse with the defendant, the transaction admitted of subdivision, and the jury were, therefore, bound to assume, as matter of law, that the locking of the door was against her will. No such legal presumption exists; and if so artificial an inference could be drawn from the facts, it should have been by the jury and not by the judge. The proposition cited from Buller, that every imprisonment includes a battery, and every battery an assault, has relation to the forms and averments appropriate to the civil remedy for false imprisonment. It is wholly inapplicable to a case like the present, where the locking of the door was not objected to by the complainant, and was a mere precaution for the privacy of an immoral act, to which, as the judge assumes, both the parties consented.

The charge should be construed as it was intended, and as it was doubtless understood by the jury. The theory of the judge was, that though the improper connection was the voluntary act of both, and though the defendant neither used force nor intended it, he was still guilty of a criminal assault, unless she acceded to his purpose before she was aware that he entertained it.

A criminal conviction for an assault cannot be upheld where no battery has been committed, and none attempted, intended or threatened by the party accused. It is indispensable to the offense that violence to the person be either offered, menaced or designed.

It is claimed that an exception has been recognized by some of the authorities to the application of the general rule in this particular class of cases. No such exception exists as applicable to an indictment for simple assault and battery. A cursory glance at some of the decisions might lead to an opposite impression; but this disappears on particular examination, if we keep in view the nature of the accusation in each case, and the statutes to which the judges respectively refer. A brief review of the authorities on this subject will show that they are in harmony with the rule we have stated. It will be observed that in several instances, the question turned on the validity of a consent procured by fraud, and applicable, not to the indignity committed, but to a supposed legitimate purpose of the party committing it.

Thus, it was held in *Rosinski's Case*, that a conviction for assault could be sustained where a medical man, with his own hands, stripped the clothes from a female patient under the fraudulent pretense that it was necessary to enable him to judge of her disease. (1 Moody's Crown Cases, 19.)

In *Nichol's Case* a similar conviction was sustained, where a teacher took indecent liberties with his female pupils, who neither assented to his advances nor resisted them. (Russell & Ryan, 130.)

In *Regina* v. *Case*, it was held that a physician was properly convicted of assault and battery in debauching a girl of fourteen, who did not assent to carnal connection, but made

no resistance to his act, from a *bona fide* belief that he was, as he represented, treating her medically for her disorder. The judges sustained the conviction, on the distinction between actual assent to sexual intercourse, and acquiescence by passive non-resistance, in an act of the physician, of the nature of which she was ignorant. (1 Eng. L. & Eq., 544.)

In *Jackson's Case*, it was held that a party who had carnal knowledge of a married woman, and effected his purpose by fraudulently personating her husband, could not be convicted of a rape. (Russell & Ryan, 487.)

In *Saunder's Case* a similar imposition was practiced on a married woman, who consented, supposing the party to be her husband, but repelled him at once on discovering the fraud, and immediately attempted suicide. On the trial of the party for rape, Baron GURNEY instructed the jury, that though her consent was procured by fraud, the prisoner could not be convicted of the principal offense; and that he would have been bound to direct a general acquittal, but for the statute of 1 Vict., ch. 85, which provided for such a case, by authorizing a conviction for a simple assault under an indictment charging a felony against the person. (8 C. & P., 265.)

In *Banks' Case*, the prisoner was indicted for feloniously assaulting and debauching a girl nine years of age. The act was with her assent; but there was some doubt on her evidence as to the consummation of the extreme offense. It was insisted by the counsel for the crown, that if the proof failed to establish the felony, the prisoner might be found guilty of an assault. Justice PATTERSON held that though the consent of a child of nine years of age was unavailing as a defense to the felony under the statute of rape, it was a bar in respect to an assault; and he instructed the jury that unless the prisoner effected his felonious purpose, they must render a general verdict of acquittal. The jury found him guilty of the capital crime. (34 Eng. Com. L., 531.)

In *Meredith's Case*, there were two counts in the indictment; one for assault with intent to commit a rape, and the other for a common assault. The first count was abandoned; but a conviction was claimed on the second, on the ground

that the girl was between ten and twelve years of age, and that the imposition of hands on her for such a purpose was an assault, even though she subsequently consented. Lord Abinger held that her assent to the act was fatal to the prosecution, and instructed the jury that to sustain a conviction for assault below the grade of felony "*you must show an assault which could not be justified if an action were brought for it, and leave and license pleaded.*" The prisoner was accordingly acquitted. (34 Eng. Com. L., 539.)

In *Martin's Case*, the complainant was ten years old. The indictment contained a count for an assault with intent to debauch her, and another for mere assault. The jury found that the prisoner was guilty, but that the girl assented. The case was reserved for the consideration of the fifteen judges; and they were unanimously of opinion, that "*as the child consented, it was not an assault,*" but that he might have been indicted and convicted under the statute which makes it a misdemeanor, without reference to consent, to have carnal knowledge of a child between ten and twelve years of age. (38 Eng. Com. L., 85.)

In the case of *The Queen v. Read and others*, the three defendants were convicted of an assault on a girl nine years of age under the following circumstances: The defendants went with the girl to a hayloft. When they first began to take liberties with her she showed some unwillingness, but *eventually* she ceased to offer opposition and apparently assented. Each of the defendants, in succession, had connection with her. The verdict of the jury was "Guilty, the child being an assenting party, but from her tender years she did not know what she was about." The case was reserved, and on argument the conviction was quashed; all the judges being of opinion that the eventual assent of the girl was a fatal objection. (13 London Jurist, 68.)

It is claimed that the case of *The People v. Hayes* established a different rule; but it will be found on examination that it is in harmony with the authorities above cited. It was there held that the accused was properly convicted of an assault with intent to commit a rape on a child under ten

years of age, whom he had decoyed for that purpose into a building; and this, though detected in the attempt while standing in a state of indecent exposure at a distance of five feet from her person. The decision was put upon the ground that the act he was attempting was one of rape, on a child of an age at which it was incapable of legal consent, under the statute defining that offense. Judge Cowen, in delivering the opinion of the court, conceded that to constitute an assault, there must be an intention "of using actual violence against the person." (1 Hill, 351.) If the law were otherwise, seduction and criminal conversation would have been indictable offenses in this State from the beginning; for they always involve a sufficient degree of force to constitute an assault and battery, except for the express or implied assent of the party.

In the present case, the complainant was an adult; and though she labored under the disadvantage of not speaking the same language with the accused, she ingenuously admits that, through a previous misadventure, she knew the nature of the act, to which the instruction of the judge assumes that she assented. It is quite probable that there was really no such assent; but if there was, she could not recover against the defendant in a civil action, nor could he lawfully be convicted of a criminal assault. *Volenti non fit injuria.*

We concur, therefore, with the court below in holding the third instruction to be erroneous; but a majority of the members of this court are of the opinion that the error could not, by possibility, have operated to the prejudice of the accused. The direction, in the case supposed, was to convict the prisoner of an assault; and the fact that he was not found guilty of the minor offense, but of the assault and battery charged in the indictment, is deemed conclusive evidence that the verdict was intended to negative any assent to the act on the part of the complainant. It is not without some hesitation that we have arrived at this conclusion. It is the right of the citizen accused of crime to claim the benefit of a fair trial and a true and just exposition of the law applicable to the offense charged. When the law in such a case has been erroneously presented, it should not be assumed on mere

speculation, however probable or plausible, that the jury were not misled by the error of the judge, or .that they understood his language in a restrained and technical sense, rather than in its popular and ordinary import when used in a like connection. But when the form of the finding is such as to show that the error was harmless as matter of legal necessity, it is not open to correction in any appellate tribunal.

On this sole ground, the judgment of the court below must be reversed, and the conviction in the Court of Sessions affirmed.

All the judges concurred in the foregoing opinion except POTTER, J., who read an opinion reaching the same result on the ground that there was no error in the charge.

POTTER, J. There was no error committed by the Court of Sessions in their refusal to quash the indictment then on trial before them, on the ground that the cause therein charged was merged in the crime of rape. This motion was doubtless based on the provision (2 R. S., 726 [marg. paging], § 42), that "if there be at any time pending against the same defendant two indictments for the same offense, or two indictments for the same matter, although charged as different offenses, the indictment first found shall be deemed to .be superseded by such second indictment, and shall be quashed." The two indictments were not for the same offense; nor by the admission made in regard to it does it appear that the two indictments were for the same matter, although charged as different offenses.

Had it appeared that in fact the indictments were for the same matter, it is seen that the statute does not declare that on the finding of a second indictment the first indictment shall be null and void, but is. to be quashed. It can only be quashed by some action of the court. This is clearly contemplated by the language of the statute. This question has been adjudicated. The Court of Sessions but followed the views of the Supreme Court in the case of *The People* v. *Monroe Oyer and Terminer* (20 Wend., 108), who said "the time when a court will entertain a motion to quash an indictment

rests, in some degree, upon the exercise of a sound discretion." And they further held it to be the true construction of the statute, that "it refers to the case of an application made for that purpose, before the trial of either indictment has commenced;" and added, with clear good sense, "it clearly could not have been the intention to give to the action of the grand jury, in finding the second indictment, an effect that would break up a pending trial upon the first." * * * "Such a view of the section would involve a folly and absurdity that should not be imputed to the makers of the law, when effect may be given to it consistent with sound principles." See also, *People* v. *Rynders* (12 Wend., 425), *People* v. *Barry* (10 Abb., 228), for a like construction. If the defendant's case had been shown to have come within the provisions of this statute, and he had made his motion in reasonable time, he was entitled to relief. But this was not shown. The second indictment was not seen by the court, and there was no evidence that the felony charged in the second, included the misdemeanor charged in that on trial. The offenses may have been entirely distinct, and the defendant punishable for both.

This point has not been seriously urged on the argument. The remaining objections raised in the case, and doubtless those upon which the General Term reversed the judgment, are those taken to the charge of the judge to the jury. Four propositions of the judge's charge, only, appear. The first and fourth are not excepted to. The second and third propositions charged, only, are here for review. The second is as follows: "2. If this defendant enticed this girl to the Sherman House, under the belief, on her part, that he did it with a friendly purpose, and the jury think, after she found out that he had an unlawful purpose in view, failed to make any more resistance than she did, from fear, or under the belief that further resistance would be useless, then the defendant must be found guilty."

The defendant had no reason to complain of this part of the charge. It was more favorable to him than he was entitled. This will appear more intelligible and clear by a

reference to the evidence with which this portion of the charge is connected, and without which it cannot be duly appreciated. This reference to the evidence is also important because circumstances in it which relate to the motives of the parties (complainant and defendant) as matters of fact, have been pressed into the argument. Though with these facts we have really nothing to do, the jury having disposed of them, yet they have been discussed. I may remark, in regard to them, that I have been unable to see anything in them that will help the defendant, or that should make him desire to have them reviewed. This girl, the complainant, then recently from Prussia, had arrived at Syracuse in a train of cars, at midnight; she was a stranger in a strange land, and in a strange city. She was without a friend, or even an acquaintance, upon whom she could call for assistance. She was without the knowledge of the language of the people, except the use of two or three words, to call upon or make known her wants, even to strangers. She was dependent upon her powers of observation, of the customs and habits and acts of others, and by the aid of signs, to make known her own wants. She had arrived at her destination for the day. She could proceed no further till the morning train should depart for Geneva. Wearied and fatigued, her imme diate want was a lodging place for the night; and for this, of necessity, her instincts, as well as her observation, would direct her to look to those who assumed to be the agents or officials of the railroads or hotels. It was not, therefore, strange, but most natural, for such a person, in such condition, to suppose that those who assumed to act as agents were really such. The taking of her satchel and the motion or signal given her by the defendant, to follow, was, to her, equivalent to a declaration on his part that he was a porter, or other authorized person, whose business or duty it was to conduct her to a lodging place. The defendant knew she could not speak English, and he knew she was alone. He was the agent for the purpose of neither the railroad or the hotels. Under the pretense of an agency, or of a right to take charge of her, he took her satchel and motioned her to follow, which she obeyed. Why

should she not?   He had no right to take, and was guilty of trespass in taking her satchel, but for a proper purpose.   He had no right, by such signals, to invite her to follow him, but with a kind motive.   She did follow him about and along the streets.   He sought admission at one place, and could not obtain it.   He moved on, and she still followed.   He took her to the Sherman House; he engaged a room in the third story, and entered it with her.   He soon brought her a glass of liquor, which she had not desired, and urged her repeatedly to drink. She tasted, but refused to drink. · He locked the door on the. inside, and put the key in his pocket; he undressed himself, motioning her to the bed.   She did not accept the invitation, but sat down in a chair by the window.   He went to bed. She lost herself in a stupor of sleep, and was awakened by his arms about her neck, striving to force her upon the bed. She struggled, but he succeeded.   If there is anything in these facts that impeach or render suspicious the conduct of the complainant, or that excuse or justify that of the defendant, I have not been able to see it.   The jury did not see it; they seem to have duly regarded and appreciated this evidence.   The real and only question, it will be seen, is, did all this constitute an assault and battery?   It is clear that it did, in the view taken by the jury, and yet the judge, by implication, left it to the jury, in this proposition, to find that all this would not be an assault and battery if she did not make all the resistance she could, unless the failure to make such extreme resistance was from fear, or under the belief that further resistance would be useless.   Such is not the law.   The judge erred in this, in defendant's favor.   This qualification by the judge was calculated to, though it did not mislead; it was entirely too favorable to the defendant. If the complainant made any resistance whatever—if she was asleep when he seized her—if the defendant seized upon her while asleep or in a state of stupor, which is the evidence and the only evidence on the subject—it was an assault and battery.   If she did not invite, or willingly consent to his presence and to his conduct (of which the case furnishes no evidence), he was guilty of an assault and battery.   I see no

elements of defense, or cause for remarkable suspicion, that the complainant, under the circumstances in which she was placed, did not object to the defendant's entering the bedroom with her — that she did not order him to leave the room — that she did not protest against the impropriety of his conduct in locking her door and putting the key in his pocket, and in going to bed, uninvited, in her room — and that she did not rush to a police office to complain of his outrage upon her. She did not invite, she had no language to forbid it. How could one in her helpless condition, do these things? A more natural reason than depravity can be found for her conduct. The jury doubtless thought, as the evidence justifies them in thinking, that these circumstances, instead of being evidence of her unchastity, was only the evidence of an infernal design on the part of the defendant, which she neither knew how, or had the power to resist, and which had made her a victim. It is elementary law that every restraint of one's liberty under the custody of another, in a goal, house, stocks, or in the street, is, in law, an imprisonment; and whenever it is done without proper authority, it is false imprisonment. And this is commonly joined to an assault and battery. In civil actions, every imprisonment includes a battery, and every battery an assault. (2 Just., 589; Bull. N. P., 22; *People* v. *Hays*, 1 Hill, 351.)

In the case of *The People* v. *Hays* (*supra*), the prisoner decoyed a female under ten years of age, into a building for the purpose of ravishing her, and was there detected while standing within a few feet of her in a state of indecent exposure. It was held that though there was no evidence of his having actually touched her, he was properly convicted of an *assault* with intent to commit a rape. The features of these cases, to that extent, are similar (assuming the verdict to be just). The decoying was alike, imprisonment being added to this case, with an actual battery proved. (See also, 2 Park. Cr., 27.) The judge at the trial, in his charge upon this proposition, improperly introduced the law in relation to the resistance demanded of complainants in cases of rape, which had no application to a case of assault and battery. Although

the law thus charged had no application to the case, there was no error committed in this proposition, to the prejudice of the defendant.

The next proposition of the judge's charge excepted to, is as follows : " 3. If the jury think that the defendant took this girl up into the room and locked himself in there with her with intent to have connection with her, she being ignorant of that intent on his part, then he 'is .guilty of an assault, although she may have afterwards assented to his wishes, and to his having connection with her."

I have been unable to detect unsoundness or error in this proposition to the prejudice of the defendant. This instruction of the judge, even if technically erroneous, it is seen did not work any injury to the defendant. This part of the charge related to an assault only. It had no influence upon the mind of the jury, for they have found the defendant guilty of the higher offense of assault and battery; showing that they entirely disregarded this speculative theory of the judge, which really had no evidence upon which to base it. Whether in criminal prosecutions the proposition that obtains in civil actions, that every imprisonment includes a battery, and every battery an assault, is applicable, I do not deem necessary to discuss in this case. If the evidence establishes anything, it establishes just the offense for which the defendant was indicted, and of which the jury have found him guilty.

The General Term have not furnished any opinion containing their reasons for their reversal of the judgment of the Court of Sessions. But the suggestions upon the brief, and the authorities cited, lead us to suppose that there is another ground for the decision, to wit, that the evidence on the trial having sustained the charge for a much higher offense, to wit, that of rape, and that the misdemeanor, or of assault and battery, was merged in the felony.

If this was the proposition upon which the judgment was reversed, it could not be regarded as sound. I think no case can be found that goes to the length of holding that on a trial for a misdemeanor, evidence tending to prove that a higher crime had been committed, would be defense

to the misdemeanor. That is all that can be claimed to have been done in this case. If, on the trial for the misdemeanor, a *conviction* had been offered in evidence, showing that for the same act the defendant had once been convicted of a felony, it would have presented a different case, and one upon which we are not now called to pass. The objection raised here was certainly not a question of fact upon which the jury had to pass. The facts assumed did not present a question of law for the decision of the judge. The defendant had allowed to him, on the trial, all the privileges that are allowable and incident to a trial for the misdemeanor charged. He was on trial for nothing else than a misdemeanor. It is hardly becoming for him to urge, that he had committed a higher crime, and ought to be more severely punished, and therefore should be acquitted of this. Such an argument was presented in the case of *Commonwealth* v. *McPipe* (3 Cush., 187.) In that case the court used the following language: "It seems to us that this objection is not open to the defendant upon this indictment. And whenever the grand jury deem it proper to find only an indictment for manslaughter, and the party is put upon his trial for that offense, he has no right to demand an acquittal on the ground that, taking the whole evidence, the case thereon is one of killing with *malice prepense.* How far, in such a case, it may be proper for the court, upon its own suggestions, or upon the motion of the public prosecutor, to discharge the jury, with a view of having the case presented in another form, it is unnecessary to decide." These are sound views, and apply to this case.

What the effect of the present conviction for a misdemeanor would be, if plead in bar of the indictment for rape, is also a question not now before us. I have been entirely unable to find a good reason for a reversal of this conviction. I think the judgment of the Supreme Court should be reversed.