For this error the judgment must be reversed, and a new trial granted.

HARDIN, P. J., and MERWIN, J., concur.

---

## Supreme Court—General Term—Fifth Department.

*June,* 1885.

### PEOPLE *v.* CLARK.

#### ASSAULT WITH INTENT TO COMMIT RAPE.

Assault with intent to commit rape is accomplished by a felonious assault made upon the person of a female, with a preconceived intent to have sexual connection with her against her will, by the use of absolute force. An attempt at sexual intercourse with a female, there being no violence, abandoned as soon as the female refused and resisted, is not an assault with intent to commit rape.

The evidence in the present case examined, and held not sufficient to warrant the submission of the case to the jury.

APPEAL by defendant Edward F. Clark, from a judgment of the Court of Sessions of Monroe County, April 17, 1883, Hon. W. C. ROWLEY, presiding, convicting defendant of assault with intent to commit a rape.

The facts appear in the opinion.

*Raines Bros.*, for defendant, appellant.

*J. W. Taylor*, district attorney, for the people, respondent.

CORLETT, J.—The defendant, Edward F. Clark, was indicted in the county of Monroe for assault and battery with intent to commit rape upon one Addie L. Glover, which offense was charged to have been committed on May 16, 1882, at the city of Rochester. He was tried on this indictment in the court of Sessions in the month of April, 1883. The jury found him guilty of the offense. Judgment was entered on this conviction, and the defendant appealed to this court.

It was proved upon the trial that Addie L. Glover, at the time of the alleged offense, resided in Bergen, Genesee county, and was in her eighteenth year; that the defendant Clark resided in Rochester, was a clerk in Odenbach's store in State street, and was in his twenty-third year. They were somewhat acquainted, having met at a dance more than a year before. The acquaintance there formed was continued until the time of the alleged offense, but nothing appears indicating that they were any more than ordinary acquaintances.

A few days before the alleged offense, she wrote a letter to Clark, which he answered, after which she again wrote him. In her first letter she writes in substance as follows:

" Mr. CLARK.

"Dear Friend: I presume you have forgotten the writer by this time, but I haven't forgotten you, and as I am coming to Rochester, I would like to see you very much, and would like to meet you at the Whitcomb House. Don't think I am bold in thus writing you, but it is my great friendship for you."

She came to Rochester by rail on the morning of May 16, 1882, and soon after her arrival called on Clark at the store. They met several times during the day—twice at the Whitcomb House. She took dinner at Mr. Pierce's, on Sophia street, in Rochester, about noon. Her business in Rochester was to

do some trading, and have some pictures taken, it being her intention to return home in the afternoon; but she missed the train, and was compelled to remain in Rochester over night. She telegraphed her mother that she would stay at Mr. Pierce's, and went to the store and informed Clark that she was left. About six o'clock they met at the Whitcomb House, where he took supper; she did not.

After supper they took a walk together, went to the railroad depot, and then in the direction of Pierce's, where they arrived at about eight o'clock in the evening. Mr. Pierce's house being dark, and he being in poor health, she concluded not to go in. They then went to Teal's and had some ice cream, after which they proceeded to the New Osborne House, where he registered, "E. C. Wilson and lady, Palmyra."

The hotel clerk assigned them the bridal chamber, which was on the second floor, near the elevator. They went into this room between eight and nine o'clock in the evening, and remained there until the next morning about six o'clock. He paid the hotel bill and they proceeded together to the depot, where she left for home, and he went to the store.

The chambermaid at the hotel remained in the hall, within a few feet of the door of this room, until ten or eleven o'clock, and took a pitcher of water into the room a short time after they went in. Neither the chambermaid, hotel clerk, nor landlord, heard any noise or disturbance in that room during the night.

The parties occupied the same bed during the night. She was undressed, except that she kept on her corsets and drawers, which were closely buttoned, and so remained during the night. Any unusual noise in that room could be heard by the chambermaid in the position she occupied.

Both parties upon the trial assumed that the above facts were proved, and a careful examination of the evidence shows that, so far as above stated, the facts are established by the evidence on both sides.

The contention on the part of the people is, that the testimony of Miss Glover was sufficient to authorize the submission of the case to the jury and to justify their findings.

Her evidence is to the effect that she did not wish to dis-

turb the Pierces on account of his feeble health, and that Clark suggested that he would take her to a hotel and get a room for her, and that she could go home in the morning without disturbing the Pierces; that she accepted the suggestion, and put herself under his charge; that he took her to this hotel and room; that she did not suspect any improper designs or purposes on his part; that she suspected nothing wrong, until after they got into the room, when he locked the door, closed the transom, and put the key into his pocket; that she then asked him what that meant; that she told him to leave, or that she would; that he made improper advances to her; that she screamed, told him she would take his heart out of him, &c.; that Clark told her he would not hurt her; that she told him he should never touch her; that he finally released her; that soon after, she became unconscious, knowing nothing that was going on until she was thrown on the bed, which brought her to herself; that she then knew for the first time that she was undressed, except that her corsets and drawers were on, buttoned and undisturbed; that Clark was sitting in the chair near the bed, and told her he would stay there all night and not touch her; that afterwards he did get into bed and stayed there with her all night, trying all the while to induce her to consent, but always stopping when she refused; that he did not threaten or hurt her.

The defendant's claim was that it was agreed between himself and Miss Glover that they should go to an hotel and stay together that night; that when they got into the room she refused to consent, unless he promised to marry her, which he declined; that he then proposed to go out and go home, but that she objected, and the result was he stayed all night, taking various liberties with her, to which she consented; but that she refused anything further, and that her drawers had been buttoned and undisturbed all night.

When the people rested, the counsel for the defendant asked his discharge, upon the ground, among others, that the evidence was not sufficient to warrant the submission to the jury of the question, whether there was an intent to ravish. The motion was denied, and an exception taken. A like motion was made at the close of all the evidence, which was denied.

The court, in charging the jury, correctly stated the rule of law as follows : The crime of assault and battery with intent to commit rape is accomplished by a felonious assault made upon the person of a female, with a preconceived intent to have connection with her, and against her will, by the use of absolute force.

The evidence of Miss Glover, construed in the light of the admitted facts, fails to satisfy the court that the case should have been submitted to the jury.

It is perfectly clear that the defendant intended to stay over night with Miss Glover and have intercourse with her. It is almost equally clear that he assumed she would consent. She testified that when they were passing the Whitcomb House, she called his attention to it by saying, " Here is the Whitcomb House ; I will go in ;" and he said, " No, I am too well known here." On reaching the New Osborne House, he registered in the manner above stated, consenting to take a room in the central part of the house, in close proximity to the elevator, where unusual noise or disturbance could be heard. It was early in the evening. Miss Glover, so far as appears by the evidence, was intelligent, and fully developed. It is unreasonable to suppose that under such circumstances he went into this room with her, with the intent of having intercourse by force and *without her consent.* It is much more reasonable to assume that he all along proceeded on the assumption that she would consent, and that, as soon as he proceeded far enough to ascertain that she would not he at once desisted.

She testified that he said during his efforts, " You are playing off on me." Such a remark is only consistent with the idea that he thought her resistance was colorable instead of earnest and sincere.

The moment her words and actions satisfied him that he was proceeding against her will and without her consent, his efforts ceased. What occurred afterwards and during the night, is inconsistent with any other view. Her evidence that he undressed her when she was unconscious, and put her to bed without taking advantage of her, leaving her drawers buttoned, and not having intercourse with her while she was in this unconscious state, is consistent with this view, but inconsistent

with the presence of felonious intent on his part. There was nothing to prevent him from accomplishing his purpose while she was in an unconscious state.

This view is strongly sustained by what subsequently occurred; for while he made persistent efforts during the night he always desisted when she commanded him.

Her own conduct, as stated by herself, during the whole evening, night, and until long after sunrise the next morning, is inconsistent with the idea that she thought or believed he intended to force her against her efforts and earnest protestations.

Her actions can only be reconciled with all the facts and circumstances by adopting the theory that he did not intend to proceed to extremities without her consent. His conduct, according to his own statement, was highly reprehensible. But a just application of the law will not allow convictions to stand unless warranted by the evidence. People *v.* Morrison, 1 *Park.* 625; Reynolds *v.* People, 41 *How. Pr.* 179; People *v.* Bransby, 32 *N. Y.* 525; People *v.* Dohring, 59 *Id.* 374; Walter *v.* People, 50 *Barb.* 144.

The evidence was not sufficient to justify the finding of a felonious intent. The conviction must be reversed.

HAIGHT and BRADLEY, JJ., concur; BARKER, J., dissents.