THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENT, *v.* JOHN RYAN, APPELLANT.

*Assault with intent to kill with a loaded pistol, which fails to go off, constitutes an assault in the first degree.*

On the trial of an indictment containing two counts, charging the defendant, first, with making an assault with a loaded pistol and shooting it off with intent to kill; and, second, with making an assault with an instrument likely to produce grievous bodily harm, the defendant was convicted under the first count. The court was asked to direct the jury, that if they came to the conclusion that the only time the pistol was aimed at the witness was when it snapped and failed to go off, they could not convict the defendant of an assault in the first or second degree.

*Held,* that the court properly declined to so charge.

That the court also properly refused to define the punishment of each of the crimes mentioned in the indictment.

The court refused to permit the complaining witness to answer whether he believed that, at the time when the defendant made the threat to kill him, he intended to carry it out.

*Held,* that the ruling was proper as it was not important what the witness believed, the question being what the defendant did and intended to accomplish.

APPEAL by the defendant from the judgment of the Court of General Sessions of the county of New York, held in and for the county of New York on the 15th day of January, 1889, convicting the defendant of the crime of an assault in the first degree, and from an order denying a motion for a new trial, and in arrest of judgment on the said day.

*James J. Walsh*, for the appellant.

*McKenzie Semple*, for the respondent.

DANIELS, J.:

The indictment contained two counts, the first charging the defendant with making an assault upon the complaining witness with a loaded pistol, and shooting it off, with intent to kill him. The second count was for a similar assault with an instrument likely to produce grievous bodily harm. And he was convicted under the first count of this indictment, and the evidence given upon the trial was sufficient to support the verdict to that effect rendered by the jury.

It was stated by the defendant, in the course of the evidence which he gave as a witness in his own behalf, that he fired two shots from the pistol, and snapped it when it did not go off, but did not aim it at the complaining witness at either time. And the court was asked to direct the jury, if they came to the conclusion that the only time the pistol was aimed at the witness was when it failed to go off and snapped, they could not convict the defendant of an assault in the first or second degree. This the court declined, and the defendant excepted to the refusal to charge this proposition. In the request which was made, the intent with which the defendant might have been animated at the time was wholly omitted. And the court was, therefore, in substance, at least, asked to direct the jury that they could not convict the defendant, even though he intended at the time to kill the complaining witness, if the pistol was pointed towards him, and it was then snapped, but failed to go off. By section 217 of the Penal Code, it has been declared that a person who, with an intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, assaults another with a loaded fire-arm, or any other deadly

weapon, or by any other means or force likely to produce death, is guilty of an assault in the first degree. This is the enactment contained in the section so far as it is applicable to this case. And the commission of the offense has not been made to depend, where a loaded fire-arm may be used and pointed, upon the fact of its being discharged. What an assault with a loaded fire-arm, or any other deadly weapon, may be, has not been declared or defined by this or any other section of the Penal Code. And the legal signification of the term, therefore, is to be ascertained and derived from the general principles of the law affecting the charge. The enactment of the statute, so far as it is applicable to this case, briefly is, that where one person assaults another with a loaded fire-arm, intending to kill that other, then he is guilty of the crime charged in the first count of the indictment as an assault in the first degree. And that conforms to the preceding state of the law. (*Slatterly* v. *People*, 58 N. Y., 354.)

The jury necessarily, by their verdict, found the defendant to have been actuated with this intent. And if what was included in this request was an assault, then both attributes of the crime were presented by it. An assault, in legal parlance, has been defined " To be an attempt, with force or violence, to do a corporal injury to another, and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." (*Hayes* v. *People*, 1 Hill, 351.)

And in *People* v. *Bransby* (32 N. Y., 525) this principle was so far sanctioned and followed as to declare it to be only indispensable to create an assault " that violence to the person be either offered, menaced or designed." (Id., 532.) And Wharton, in his American Criminal Law (4th ed., § 1244), states the legal principle in very nearly the same form. And that is, that " it is an assault to point a loaded pistol at any one, but not an assault to point a pistol at another which is proved not to be so loaded as to be able to be discharged." And so, in substance, it was also held in *People* v. *Connor* (53 Hun, 352). The weapon in the hands of the defendant was not at the time in this disabled condition. For it had previously been twice ·discharged, and only failed to be discharged again when it was snapped by some intervening circumstance not disclosed by the

evidence, and not dependent on any act of the defendant. What the defendant did, as the proof was obtained from the complaining witness, was to point the instrument at him. And, in one of its discharges, the testimony was that he felt the ball, or its effects, as it was passing by his neck. And it further appeared, by his testimony, that the defendant had, immediately preceding the discharge of the pistol, threatened to kill the complaining witness. The evidence was sufficient upon each branch of the case to require it to be submitted to the jury, and the verdict which they rendered is amply supported.

In the course of the charge, the court defined to the jury the offense of an assault in the second degree, as that has been described and designated by section 218. The defendant's counsel excepted to what was said as to this degree of the offense. But the court followed literally the language of so much of the section as related to this case, and accompanied it with no more than pertinent explanations. This exception, therefore, was not well founded. And it is clear that it could not have been of any disadvantage to the accused, inasmuch as the jury found him to be guilty of the higher offense. The court also, in the submission of the case to the jury, stated to them that what had been said concerning the trade unions had no importance in the case. In giving this information to the jury the court was very clearly right, and the exception to it was unfounded.

The defendant's counsel also requested the court to define the punishment of each of the crimes mentioned in the indictment. That was declined, and an exception taken to the refusal. The provisions contained in the law defining the extent of the punishment to which the defendant might be subjected upon an adverse verdict against him, formed no part of the inquiry which the jury were required to make in the case. What they were impanneled and sworn to do was to render a truthful verdict upon the evidence; and whether the punishment following their verdict would be greater or smaller in no way came within the range of their province; for it could in no manner affect the weight or indication of the evidence which the jury were required to consider and act upon. This was held to be the law in *Russell* v. *State* (57 Georgia, 420, 424). In *People* v. *Cassiano* (1 N. Y. Crim. R., 505), the jury

inquired of the court what the punishment would be for the offense included in the indictment. This was not given, and the court in its opinion said " We think the information should have been given. In all cases the jury should know the effect of their verdict." But the conviction was not reversed on this ground, but upon another which was held to be a material and fatal error in the proceeding. The case is, therefore, not an authority sustaining this request made by the counsel for the defendant. Neither is it sustained by anything which was said in *People* v. *Bragle* (88 N. Y., 585, 591). It was the duty of the jury by their verdict to give effect to the evidence, and that alone. And informing them what the extent of the punishment might be would not aid them in the discharge of that duty. And no disposition whatever was exhibited on the part of the jury to obtain the information which was refused.

The defendant had been discharged from a printing establishment under the superintendence of a Mr. Monroe. And the complaining witness was asked whether he had not discharged thirty men from that place. This was objected to and excluded by the court. The defendant's counsel then stated the object of the question to be to prove if the men were discharged by giving information to Mr. Monroe, that the information was untrue, and this was designed to affect the credibility of the witness. The court excluded the evidence, and the defendant's counsel excepted. The inquiry proposed to be made had no possible connection with any fact required to be proved to make out the commission of the offense or to sustain the defense. And whether the court would permit the inquiry to be made, as it very well might have done by way of cross-examination of the witness, was within the discretion of the judge presiding at the trial. (*Canaday* v. *Krum*, 83 N. Y., 68; *Pratt* v. *Peckham*, 44 Hun, 247, 252.)

The refusal to allow it, as the evidence proposed to be obtained and contradicted, in no manner would tend to disprove the existence of the charge, presented no error in the ruling of the court. (*People* v. *Bragle*, 88 N. Y., 585, 588.) For if the answer had been produced, as the defendant's counsel expected it might be, he would not have been at liberty to contradict it by other testimony, for the reason that it affected no material circumstance within the issue on trial. It is only when a witness has been interrogated con-

cerning a statement relating to some material part of the case, that his denial of the statement can be contradicted by other and independent evidence produced by the party affected by the answer. Where the evidence relates to no more than an immaterial or incidental circumstance, there evidence contradicting the statement is not permitted to be given. (*Carpenter* v. *Ward*, 30 N. Y., 243, 246; *Marx* v. *People*, 63 Barb., 618; 1 Greenl. on Ev. [7th ed.], § 462.) The exception to the ruling of the court, refusing to permit the complaining witness to answer whether he believed at the time when the defendant made the threat to kill him he intended to carry it out, is devoid of merit. It was not important what the witness believed, but the case depended upon what the defendant did and he himself intended to accomplish. The witness, upon his cross-examination, also stated that it was said by the defendant that he had his mother or somebody to support. He was then asked the question: " You didn't want to get that before the jury, did you?" This was excluded, and an exception was taken to the ruling in this manner made. Whether the witness did or did not want to get the statement before the jury, was not a material question for him to answer. There was no concealment made as to the circumstances attending the altercation between these men or the efforts made by the defendant to shoot the witness. And the question which was put was more in the nature of an impertinence than by way of exhibiting a disposition to elicit information which would be advantageous in the case. It may, however, be as well to add that it would do no harm to allow even inquiries of this character to be answered. For in criminal cases it is not advisable to apply as against the defendant the strict rules of evidence for the disposition of even immaterial inquiries.

By the notice of appeal it is stated that an appeal is taken from an order denying a motion for a new trial and in arrest of judgment. But no order of this description is contained in the case, and this part of the appeal, therefore, cannot be considered. The conviction was right and it should be affirmed.

VAN BRUNT, P. J., concurred.

BARRETT, J.:

I concur with Mr. Justice DANIELS in the conclusion that it is an assault with a loaded fire-arm, to shoot at a person with intent to

kill, though accidentally the bullet does not happen to be propelled from the pistol. The statutory assault is not with an expelled bullet, but with a loaded fire-arm. When the weapon is loaded, but snaps, the actor has done everything in his power to effectuate the deadly purpose. He cannot escape because of the accident which frustrated that purpose, any more than if the bullet were expelled but missed its mark. The request was bad if the hypothesis came within the definition of assault in the second degree, for such request was in the disjunctive.

An assault in the second degree does not require an intent to kill nor even the use of a loaded fire-arm. All that is demanded is the willful and wrongful *use of a* weapon likely to produce grievous bodily harm. (Penal Code, § 218, subd. 4.) Clearly, the snapping of a pistol pointed at the complainant, with intent to fire, was such an assault " *by the use* of a weapon or other instrument likely to produce grievous bodily harm."

But, further, the hypothesis was without foundation. There was no evidence even tending to support the claim that the only time the pistol was aimed at the complainant was when it snapped. Nor was there testimony from which this, as one of two possible inferences, could be deduced. The defendant denied that he ever pointed the pistol at the complainant, either when it went off or when it did not. The complainant said nothing directly about when or how it went off, but declared that he heard the click, saw the flash and almost felt the heat of the ball as it passed his neck. Again, he testified that he saw a flash and felt a concussion at the back of his head. At these times the pistol was certainly aimed at the complainant, and it is equally certain that it went off. Upon such testimony it was absurd to talk of the time when the pistol snapped and did not go off as the only time when it was aimed at the complainant. The court gave the jury all the instructions properly called for by these facts, and it was not error to refuse to supplement such instructions with those called for by this request. These were the instructions actually given:

" If you believe the story of the defendant, that he did not point this weapon at the man at all, of course he is not guilty, that is certain, because if he did not aim it at him, but aimed it at the ground and sky, then he did not so point as to inflict any wounds at all upon

this man, and he is not guilty. But if you believe that he pointed it at him, the fact that he was a bad marksman does not relieve him." Besides this, the fullest definition was given of the crimes charged in the indictment, with appropriate explanations as to the applicability of the evidence. The case, therefore, comes within the principle laid down in *Slatterly* v. *The People* (58 N. Y., 357), that "when the instructions of the court are unexceptionable as to the offense charged, and for which the prisoner is · on trial, and such instructions cover every element of the crime, and correct rules for the proper application of the evidence, it is not strictly the right of the prisoner to ask instructions upon a hypothetical case based upon other facts."

Upon all the other questions discussed I also concur. But I must be permitted to dissent from the suggestion, that in criminal cases it is not advisable to apply as against the defendant the strict rules of evidence for the disposition of even immaterial inquiries. There should, of course, always be firm and even tender consideration for a defendant's rights, but the object of the trial should never be overlooked, namely, to reach the truth.

That result cannot well be expected if parties are permitted to wander from the real issues. Inquiries, irrelevant in substance and argumentative in form, only tend to confuse juries or to warp their minds. The guilty should not be afforded that kind of an opportunity to escape. The innocent need no such devices.

The judgment, I agree, should be affirmed.

Judgment affirmed.