PEOPLE *v.* TERRELL.

*(Supreme Court, General Term, Fifth Department.* October 23, 1890.)

ASSAULT IN THE SECOND DEGREE—INSTRUCTIONS—INTENT.

On an indictment for assault in the second degree, defined by Pen. Code N. Y. § 218, subd. 4, as where one "willfully and wrongfully assaults another by the use of a weapon or other instrument or thing likely to produce grievous bodily harm," the court charged that "in such case there is no intent about it,—no question of intent of assault in the second degree. If they assault a person with an instrument likely to do grievous bodily harm, they are guilty of an offense of assault in the second degree, regardless of intent." On defendant's excepting to the charge, the district attorney stated that he "did not understand the court to charge that no intent whatever is necessary to constitute the crime of assault in the second degree;" to which the court replied, "There must be an intent to do something wrong, —an intent to commit a crime,—but there is no intent to kill. This is the distinction between the first and second degrees of assault." *Held,* that the error in charging that no intent was necessary was not cured by the reply of the court to the district attorney.

Appeal from court of sessions, Steuben county.

Nathan Terrell was indicted for an assault on one Alice E. Young. There was a conviction of assault in the second degree, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Francis A. Williams,* for appellant. *Frank H. Robinson,* for respondent.

CORLETT, J. In September, 1889, an indictment was found against the defendant, containing two counts. The first charged in substance that on the 30th day of May, 1889, he committed an assault in the first degree upon Alice E. Young, and the second count charged him with assault in the second degree. He was tried at a court of sessions in Steuben county on the 7th day of February, 1890, before the county judge and a jury. The trial resulted in a verdict of guilty of assault in the second degree, upon which judgment was entered, and the defendant appealed to this court. The parties had lived neighbors in the town of Lindley, Steuben county, many years, and had always been on friendly terms, exchanging visits, until about a year before, when differences arose growing out of the trial of one Patterson, who was a brother of Alice E. Young, for homicide. After that there was no friendly intercourse between the families. There was a bridge over Ryer's creek, crossing the highway between the residences of the parties. On the 30th of May, 1889, the defendant on returning home found that the location of this bridge had been changed. The defendant then took it up and placed it on the old foundation. While he was tearing up the bridge, the complainant and other members of her family stood in front of her house, about 16 rods away, watching him. After tearing up the bridge he took from his pocket a revolver, fired it in the air, making exultant demonstrations. After shooting, he replaced the

revolver and returned to the barn. The complainant started to cross the road, and the defendant returned from his barn to the north abutment of the bridge. The evidence on the part of the people tended to show that he fired a bullet at Mrs. Young, and that it whizzed near her, although she was not hit. The evidence on the part of the defendant tended to show that he only fired in the air for the purpose of frightening the complainant. The evidence on the part of the people also tended to show that the defendant applied to Mrs. Young opprobious epithets, which is denied on the part of the defense. It appeared that the location of this bridge was matter of feeling and controversy between the families, it being claimed on the part of Mrs. Young that her husband placed the bridge which the defendant removed by order of the highway commissioner. On the part of the defendant it was claimed that the act of the person changing the location of the bridge was unauthorized, and it appears that he had obtained an injunction to prevent it.

Assault in the second degree is a felony. Pen. Code, § 5. The punishment is imprisonment not less that 2 years nor more than 5; also there may be a fine imposed of not more than $1,000. Section 221. The county judge sentenced the defendant to 4 years and 10 months' imprisonment. Section 217 of the Penal Code defines assault in the first degree as an assault with intent to kill by the means therein specified. Subdivision 4, § 218, defines assault in the second degree, so far as applicable in this case, as follows: "Willfully and wrongfully assaults another by the use of a weapon or other instrument or thing likely to produce grievous bodily harm." The central contention on this appeal is that the learned county judge erred in charging the jury. The portions of the charge excepted to are as follows: "In such a case there is no intent about it,—no question of intent of assault in the second degree. If they assault a person with an instrument likely to do grievous bodily harm, they are guilty of an offense of assault in the second degree, regardless of intent,—regardless of intent to injure." The learned judge had already charged that, to find him guilty of assault in the first degree, the jury must find an intent to kill. At the close of the charge the defendant's counsel excepted to the portion above quoted on the question of intent. Thereupon the learned district attorney stated: "I did not understand the court to charge that no intent whatever is necessary to constitute the crime of assault in the second degree, but understood the court to say there must be an intent to kill to constitute a crime of assault in the first degree. Of course, I understand that it is necessary there should be an intent to do bodily harm, to commit a wrong, not an accidental shooting, but the absence of an intent to kill." The learned judge then stated, in reply to the district attorney's remarks: "There must be an intent to do something wrong,—an intent to commit a crime,—but there is no intent to kill. This is the distinction between the first and second degrees of assault." The court further stated: "There must be an intent to kill in assault of the first degree, but there shouldn't be an intent to kill in order to constitute an assault of the second degree." It will be observed that the learned district attorney saw that the court had fallen into an error in the charge as originally made, and his remarks were intended to induce the court to so modify the charge as to obviate the force of the exception taken by the prisoner's counsel. The charge as originally given, as a whole, distinctly states, and was well calculated to convey the impression to the jury, that it was not necessary to find any intent on the part of the prisoner in order to authorize conviction in the second degree. In *People* v. *Sullivan*, 4 N. Y. Crim. Rep. 497, Justice BRADLEY states the rule as follows: "One, and an important, element of crime, is intent. To constitute a criminal assault, an intent to do bodily harm or by violence is requisite. That is a proper question for the jury, under proper instructions from the court, and it is no less so when it is involved in the use of a weapon." This was always the rule. There must be an intention coupled with the

present ability of using actual violence against the person. *Hays* v. *People,* 1 Hill, 351; *People* v. *Ryan,* 8 N. Y. Supp. 241. The learned district attorney cites *People* v. *Connor,* 6 N. Y. Supp. 220, as an authority in support of the charge in this case. The only real question in that case was whether the proof was sufficient to sustain the allegations in the indictment. It cannot be inferred from the prevailing and dissenting opinions that there need be no intention to inflict grievous bodily harm in order to constitute an assault in the second degree. It is a familiar rule that, in order to obviate an erroneous charge to the jury upon a material point, it must be withdrawn in such explicit terms as to preclude the inference that the jury might have been influenced by it. *Chapman* v. *Railway Co.,* 55 N. Y. 579. In *Stokes* v. *People,* 53 N. Y. 164–184, the rule is stated thus: "It is impossible that we should know whether these instructions effectually eradicated from the minds of the jury the erroneous impression calculated to be produced by the previous portion of the charge, and we cannot therefore pronounce as a conclusion of law that it had no influence upon the verdict." These suggestions apply to the charge in this case. Its modification was obviously caused by the suggestions of the district attorney, and all parts of the erroneous charge were not distinctly withdrawn. The portion quoted may have produced a strong impression upon the minds of the jury which the modification, under the circumstance, did not entirely remove. The counsel for the appellant argues that other material errors occurred on the trial, but in view of the conclusion reached it is not necessary to consider them. They may not appear on another trial. The judgment should be reversed, and a new trial granted. All concur.