THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* NATHAN KATZ, Appellant.

Argued January 21, 1943; decided April 22, 1943.

*Samuel Bader* and *Harry G. Anderson* for appellant.

*Thomas Cradock Hughes, Acting District Attorney (Edward H. Levine* of counsel), for respondent.

FINCH, J. Defendant-appellant has been convicted of assault in the second degree.

Many of the essential facts are not in dispute, and the record is substantially as follows. On the evening in question Gunther, the complainant, had entered a bar and grill in search of a woman with whom he had an appointment. Not finding the woman present, Gunther left immediately. However, he noticed defendant at the bar but did have any conversation with him. As Gunther left, defendant followed and, going up to Gunther who was standing on the sidewalk near the curb conversing with two men, made a remark inaudible to Gunther and then grabbed the latter by the lapel of his coat. When Gunther sought to remove the hand of defendant, the latter suddenly struck him two blows on the jaw breaking the jaw in three places, and requiring the wiring of the teeth that remained which necessitated treatment thirty-nine times, thus

showing the infliction upon complainant, in the words of the statute, of grievous bodily harm.

Defendant did not take the stand but produced two witnesses. One of the witnesses, Cohen, said he was drinking at the bar with defendant and a man named Weiner, who was president of the corporation owning the bar and grill. Cohen testified that Gunther did not enter the barroom but that defendant went out and gently put his hand on Gunther's shoulder and asked Gunther to come in, but instead Gunther turned and struck a blow at defendant. Thereupon the two men exchanged blows until separated by the companions with whom Gunther had been conversing. Weiner testified that he saw defendant leave the barroom and gently place his hand on the shoulder of Gunther. This witness testified that he then turned his head and saw no more until someone shouted "Fight," and the witness turned around to see defendant and Gunther fighting. The effect of the testimony for defendant would at the most have substantiated the claim by defendant that his assault on Gunther was justified as an act of self defense. The verdict of the jury necessarily rejects the testimony of these witnesses, and the defense of self defense, and accepts the testimony of Gunther which is amply sufficient to sustain the verdict.

The trial court instructed the jury in the main charge that, in order to constitute assault in the second degree, there must be a specific intent to inflict grievous bodily harm upon the part of the person committing the assault. The jury were told that it is not sufficient that there be merely an intent to injure even if grievous bodily harm results, but rather that it is essential that specific intent to inflict such harm must also be present.

The trial judge having so charged in the main charge in the morning without exception, we take up first the question whether, in the afternoon when the jury specifically asked the judge for a "definition of second and third degree assault," he committed error in mentioning only the difference in the seriousness of the injuries inflicted without again calling attention to the necessity of finding specific intent to inflict grievous bodily harm as a necessary element of assault in the second degree. In the course of the supplemental charge, the court said: "* * * if you are satisfied beyond a reasonable doubt that

the defendant committed the assault unjustifiably and the injuries are grievous bodily harm, then that would be assault in the second degree. If, however, the injury is a slight injury, not grievous bodily harm — a person may get a slap in the face — that is assault in the third degree because there is hardly any injury there; it may be a discoloration of the eye or a reddening of the face, but it is an assault. It is some force used against the person of another with the intent to do him some harm. If the harm is slight injury, then it is assault in the third degree, simple assault. If the harm done is not slight and not fatal, but grievous bodily harm, then it is assault in the second degree. You have heard the testimony of the doctors and the other people who testified about the injuries which the complainant here is said to have sustained. If you are satisfied beyond a reasonable doubt that that is a grievous injury, that it is an injury constituting grievous bodily harm, then you may find the defendant guilty of assault in the second degree. If, however, the injury is not grievous bodily harm, but a slight injury, then you may find him guilty of assault in the third degree.''

The only mention of intent in this supplementary charge is in reference to the intent in assault generally namely, '' a wrongful act, wilfully done, with force, against a person of another, to do him bodily injury.'' It cannot be said that this supplemental charge includes specific intent to inflict grievous bodily harm as part of the definition of assault in the second degree unless we read into the definition given in the afternoon that part of the definition given in the morning, that such specific intent is necessary. The failure to repeat specific intent to do grievous bodily harm as an element of assault in the second degree was heightened when counsel for the defendant objected to the instructions given in the supplemental charge upon the ground that these instructions '' in no way took into account the question as to whether or not the defendant intended any serious bodily harm, in the definition of assault in the second degree.'' Because of this failure of the court to reiterate the necessity of finding specific intent to inflict grievous bodily harm as an element of assault in the second degree, we cannot say that the jury did not convict this defendant upon a finding alone of grievous bodily harm.

Outside of a narrow class of exceptions, punishment is meted out by the law of crimes for a specific unlawful intent. The words in subdivision three of the statute defining assault in the second degree reasonably imply the necessity of a specific intent. The words of the statute are " wilfully and wrongfully wounds or inflicts grievous bodily harm upon another * * *." (Penal Law, § 242). In other words, as the statute reads, the requirement as to intent is co-extensive with the act prohibited. If the legislative intent were otherwise the statute would read " a person who with intent to injure inflicts grievous bodily harm." Subdivision four of the same section uses the same phrase " wilfully and wrongfully " in the same setting as it appears in subdivision three, and this same phrase so appearing in subdivision four has been construed to require a specific intent. (*People* v. *Rytel,* 284 N. Y. 242, 245; *People* v. *Osinski,* 281 N. Y. 129, 131.) In addition, assault in the second degree is a felony (Penal Law, § 243; *People* v. *Rytel, supra,* at p. 246), whereas simple assault is only a misdemeanor. (Penal Law, § 245; *People ex rel. Devoe* v. *Kelly,* 97 N. Y. 212.) If the contention is sustained that specific intent is not required to constitute an assault under subdivision three of section 242, then the unusual result would follow that an accused might be convicted of a felony although he had no felonious intent. Moreover, the distinction carried into the statute between second and third degree assault would seem to follow from the common law distinction between aggravated and simple assault. At common law all assaults and batteries were classified as simple assaults and, therefore, misdemeanors. (*Commonwealth* v. *Barlow,* 4 Mass. 439; *Commonwealth* v. *Roby,* 12 Pick. 496.) To constitute an aggravated assault, however, a specific felonious intent was required and such aggravated assaults were punished more severely than simple assaults. (Clark & Marshall on Crimes [3d ed.] pp. 249, 250.) Statutes have been enacted in many states carrying out in general the common-law distinction between aggravated and simple assaults. (Clark & Marshall, *supra;* 4 Am. Jur., p. 142; Assault and Battery, § 26.) Thus in this State the revised statutes classified certain assaults as felonies where a felonious intent was present. (*Foster* v. *People,* 50 N. Y. 598, 603.) The same distinction seems to have been car-

ried out by the draftsmen of the Penal Law, by treating aggravated assaults under sections 240 and 242, and simple assaults under section 244. In consequence of this historic background, a specific felonious intent is required under section 242, subdivision three, of the Penal Law. The failure of the trial court, therefore, to reiterate in the supplementary charge the necessity of the specific intent to inflict grievous bodily harm as an element of the crime charged, constitutes reversible error requiring a new trial.

The judgments should be reversed and a new trial ordered.

CONWAY, J. (dissenting). For a defendant to be guilty of any degree of assault it is, of course, necessary that he intend to injure the one assaulted. If it were necessary for the court, to charge that in order to convict the defendant of assault in the second degree the People were required to prove a *specific intent* to inflict *grievous bodily harm* upon the one assaulted, we would agree that the court erred in its charge to the jurors when they returned for instructions. We do not think it was necessary so to charge. The statute (Penal Law, § 242) reads, insofar as important for our discussion here:

" A person who, under circumstances not amounting to the crime specified in section two hundred and forty,

*   *   *   *   *   *   *

" 3. Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon; or,

" 4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm; or,   *   *   *."

This is a matter of statutory construction and the statute alone defines the crime. There are five subdivisions to section 242. In each of three of the subdivisions, other than subdivisions three and four, a specific intent is required. Two of those three begin with the words " With intent." The other subdivision, the fifth, uses those same two words as the third and fourth words in the sentence which comprises it. We think that the words used by the Legislature were carefully chosen in order to express exactly what was intended. No specific intent was required in subdivisions three and four because subdivision three was intended to cover an act of assault by which " *grievous*

*bodily harm* upon another, either with or without a weapon '' was accomplished, *whether or not specifically intended* while subdivision four was intended to cover an act of assault committed against '' another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm '' *whether or not grievous bodily harm resulted.* In other words under subdivision three the determinant was the grievous injury; under subdivision four, the determinant was the use of a weapon, or other instrument or thing likely to produce grievous bodily harm.

Statutes making the aggravated character of the assault to depend upon the character of the injury inflicted are found in many states. See 6 C. J. S. Assault and Battery, section 79. Thus in *State* v. *Damuth* (135 Minn. 76 at 79, 80) it was said:

'' It was not necessary to a conviction for assault in the second degree that the defendant in striking the blow should have the specific intent to put out Nagel's eye. It is sufficient, under the language of the statute, if he wilfully and wrongfully struck the blow. ' It would be a mistake to suppose that in order that an act may amount to a crime the offender must intend to commit the crime to which his act amounts, but he must in all cases intend to do the act which constitutes the crime.' 2 Stephens, Hist. Crim. Law, 112, quoted in *State* v. *Quackenbush,* 98 Minn. 515, 521, 108 N. W. 953.

'' So it was sufficient to a conviction that Lind Damuth wrongfully intended to strike the blow which blinded Nagel, although he had no intent to put out his eye. The word ' wilfully ' means ' designedly ' or ' intentionally.' *State* v. *Lehman,* 131 Minn. 427, 155 N. W. 399. If the act was intentionally done, the defendant could be convicted of assault in the second degree, though he did not intend all the consequences of the act. If Damuth was the aggressor, the act was wilful and wrongful; if he was not the aggressor, he was, under the evidence and the law as laid down by the court, guilty if [sic] no crime.

'' It is argued that the affray in which Nagel was injured was only a fist fight, that defendant did not intend to inflict grievous bodily harm, and that consequently he was guilty of assault in the third degree only.

'' But it cannot be conceded that grievous bodily harm can be inflicted only by means of a weapon. Men have been killed with

the bare hands or by blows from the naked fist. Grievous bodily harm may result from an assault although the assailant be unarmed. Recognizing this, the statute (G. S. 1913, § 8632, subd. 3), punishes as for assault in the second degree, one who wilfully and wrongfully inflicts bodily harm, even without a weapon. The grievous bodily harm, resulting from the assault and battery in this case, justified the instruction that the jury might convict of assault in the second degree. The evidence also justified the court in charging the jury that they could convict defendant of the offense charged, or of assault in the second degree, or find him not guilty. *State* v. *Ronk*, 91 Minn. 419, 98 N. W. 334; *State* v. *Pontoniec, supra.*"

It seems to us that the Legislature intended that one who wounds or inflicts grievous bodily harm upon another must answer for the *result* of his act. He is the one who must run the risk. He may avoid that risk by not committing the assault. If he commit the assault it must in law be said that among the consequences of his criminal act which were within his contemplation and for which he is to be held responsible is that such grievous bodily harm may be wrought by him that he will be a felon before the law. This is nothing new in the law. The cases, beginning with one in the reign of Charles II, on the consequences which a guilty person must be deemed to have had in contemplation when he acted, in cases resulting in death, will be found collected in *People* v. *Kane* (WILLARD BARTLETT, Ch. J.), (213 N. Y. 260, 271-277).

The original charge of the court was more favorable to the defendant than was required. The instructions given to the jurors upon their later request were correct.

The judgment should be affirmed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and LEWIS, JJ., concur with FINCH, J.; CONWAY, J., dissents in opinion in which DESMOND, J., concurs.

Judgments reversed, etc.