THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ERNEST WOOD, Appellant.

Third Department, March 30, 1960.

*Valent & Callanan* (*John P. Callanan* of counsel), for appellant.

*Liston F. Coon, District Attorney,* for respondent.

REYNOLDS, J. Defendant was indicted for assault in the second degree, the indictment stating: '' The said defendant, in the County of Schuyler, on or about the 24th day of December, 1957, assaulted Helen Woolever and Roger Woolever with a shot gun, an instrument or thing likely to produce grievous bodily harm, by aiming said gun in their direction, with the threat to shoot.''

The defendant has been separated from his wife for about a year and a half, and the two daughters of the marriage were living with the defendant. On the evening of December 24, 1957 the Woolevers drove the defendant's wife to the house where defendant and the two daughters were living. The mission was to deliver some Christmas presents to the children. Upon the arrival at the house defendant's wife went inside, and the Woolevers waited in their car on the highway. While so seated in the car, defendant appeared and began to pound on the car windows, addressing foul language to them. They drove down the highway and defendant followed in his car. They then turned into a driveway of a nearby house. The defendant drove in behind them, got out of his car, began to call them names and then reached in his car and brought out a shotgun. They drove ahead to the end of the driveway and defendant followed on foot until he was at the side of their car. They testified that defendant placed the shotgun to his shoulder pointed it at them and said, '' You see this, I will get you yet.'' That he then lowered the gun, returned to his car and drove away. The defendant testified that he took the gun out of the car, did not point it at complainants, but held it at the position '' port arms '' and said, '' You see this.'' He further testified that the gun was not loaded, as he had used all his shells during the deer season. Upon these facts the jury returned a verdict of guilty of assault in the second degree. This verdict must be reversed for two reasons: first, because of errors in the court's charge, and second, because the facts,

in our view, do not warrant a finding of assault in the second degree (Penal Law, § 242, subd. 4) but would only support a conviction of assault in the third degree, upon a proper charge.

The court failed to charge specific intent as required by *People* v. *Katz* (290 N. Y. 361, 365), in fact failed to clearly charge that any intent was necessary. At one point the court stated: " He does not need to have the intent to commit the assault, but he must have the intent of doing it for the purpose of scaring these people." It was held by the Court of Appeals in *People* v. *Katz* (*supra*), that the requirement as to intent under subdivisions 3 and 4 of section 242 of the Penal Law is co-extensive with the act prohibited, and further stated in reference thereto (pp. 365–366): " Subdivision four of the same section uses the same phrase ' wilfully and wrongfully ' in the same setting as it appears in subdivision three, and this same phrase so appearing in subdivision four has been construed to require a specific intent. (*People* v. *Rytel*, 284 N. Y. 242, 245; *People* v. *Osinski*, 281 N. Y. 129, 131.) In addition, assault in the second degree is a felony (Penal Law, § 243; *People* v. *Rytel, supra,* at p. 246), whereas simple assault is only a misdemeanor. (Penal Law, § 245; *People ex rel. Devoe* v. *Kelly,* 97 N. Y. 212.) If the contention is sustained that specific intent is not required to constitute an assault under subdivision three of section 242, then the unusual result would follow that an accused might be convicted of a felony although he had no felonious intent. Moreover, the distinction carried into the statute between second and third degree assault would seem to follow from the common-law distinction between aggravated and simple assault. At common law all assaults and batteries were classified as simple assaults and, therefore, misdemeanors. (*Commonwealth* v. *Barlow,* 4 Mass. 439; *Commonwealth* v. *Roby,* 12 Pick. 496.) To constitute an aggravated assault, however, a specific felonious intent was required and such aggravated assaults were punished more severely than simple assaults. (Clark & Marshall on Crimes [3d ed.] pp. 249, 250.) Statutes have been enacted in many states carrying out in general the common-law distinction between aggravated and simple assaults. (Clark & Marshall, *supra*; 4 Am. Jur., p. 142; Assault and Battery, § 26.) Thus in this State the revised statutes classified certain assaults as felonies where a felonious intent was present. (*Foster* v. *People,* 50 N. Y. 598, 603.) The same distinction seems to have been carried out by the draftsmen of the Penal Law, by treating aggravated assaults under sections 240 and 242, and simple assaults under section 244."

Subdivision 4 of section 242 of the Penal Law reads as follows:

" A person who   *   *   *

" 4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm   *   *   *

" Is guilty of assault in the second degree."

Applying the reasoning of *People* v. *Katz* (*supra*) the specific intent required would be the intent to commit an assault with a weapon likely to produce grievous bodily harm.

Although defendant's counsel failed to take proper exceptions to the court's charge an appellate court may order a new trial if it is satisfied that the verdict against the prisoner was against the weight of evidence or against the law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below (Code. Crim. Pro., § 527).

We find lacking here one of the requirements of the statute, that is " the use of a weapon   *   *   *   likely to produce grievous bodily harm ". A person who menacingly points an unloaded shotgun at another cannot be said to be using a weapon " likely to produce grievous bodily harm ", even though he may have the intent to assault. If he intends to use it as a club, swing it at the head of another, the answer might, of course, be different. But if he uses it in the manner of its usual purpose and design, which is the most that can be inferred from this record, he surely cannot be charged with the use of a weapon likely to produce grievous bodily harm. Thus upon the facts of this case, defendant's crime was at the most assault in the third degree.

The testimony of the defendant that the shotgun was unloaded is uncontradicted, and this brings us to the interesting question of whether the pointing of an unloaded gun in the State of New York constitutes a simple criminal assault, that is, assault in the third degree.

We have been unable to find any reported cases in this State and no case has been called to our attention, directly holding that the pointing of an unloaded gun at a person constitutes an assault. Respondent herein cites the cases of *People* v. *Morehouse* (53 Hun 638, opinion in 6 N. Y. S. 763) and *People* v. *Tremaine* (129 Misc. 650). In both those cases the statements to that effect were dicta for in the first the defendant admittedly had a loaded gun and in the second the crime of assault was not involved. The *Tremaine* case recognized that the authorities generally are split on this question. The court in *People* v. *McKenzie* (6 App. Div. 199) while recognizing that there was dictum to the contrary in *People* v. *Ryan* (55 Hun 214)

assumed that an assault could be committed with an unloaded gun.

Where there is no proof that the gun was loaded, and the charge is that an assault was committed by the use of a gun in the manner of its usual purpose and design, not as a club, but by pointing it at another person, the holdings of the adjudi cated cases are hopelessly divided. This is true in this country and also in England. Authors and commentators express a like difference of opinion. Those jurisdictions which hold that it does not constitute an assault base their decisions on the nonexistence of a present ability to cause harm, or that the intent to inflict a physical injury is absent. Other jurisdictions hold that pointing an unloaded gun at a person who does not know that it is unloaded, and putting him in fear of bodily harm because of the threatening manner in which it is used, con- stitutes an assault. Part of the conflict and confusion results because of the lack of unanimity of opinion by courts and text writers as to the definition of criminal assault. It is clear that in civil assault apparent ability to cause injury is sufficient because the reasonable apprehension or fear created in the mind of the assaulted person may constitute the tort, but it has been held in several jurisdictions that present ability is an essential element of criminal assault. Some States have statutes requiring present ability, and rule out assaults with an unloaded firearm used in its usual manner and not as a bludgeon. The correct rule as to criminal assault is far from clear. In an article entitled '' The Misuse of the Tort Definition of Assault in a Criminal Action '' (11 Rocky Mountain L. Rev. 104 [1939]) the writer states that the correct and more generally accepted definition of criminal assault is '' An attempt or offer with force or violence to do a corporal hurt to another.'' He calls atten- tion to Bishop's definition which is '' any unlawful physical force ' creating a reasonable apprehension of immediate physi- cal injury ' '' (Bishop, New Criminal Law [8th ed.], § 23) and states that the cases cited by Bishop to support this definition do not support it. Bishop cites several English cases which the note writer points out were overruled by *Regina* v. *James* (1 Car. & Kiv. 530 [1844]) which held that the pointing of an unloaded gun is not a criminal assault. He argues that since the American cases which hold it to be an assault all cite Bishop or the English cases they are therefore based on a case overruled in its own jurisdiction. He maintains that under Bishop's definition there is no distinction between civil and criminal assault and that this is wrong.

Professor Rollin Perkins in an article (26 Boston U. L. Rev. 119, 136 [1946]) maintains that although there was originally a distinction between civil and criminal assault the criminal has tended to take over the tort concept. Thus under what he terms the modern rule an assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. He enumerates certain States that have statutes making actual present ability a requisite of criminal assault, Arizona, California, Colorado, Idaho, Illinois, Indiana, Utah and Wyoming. His conclusion is that in jurisdictions giving full scope to the modern rule a criminal assault may be committed by pointing an unloaded gun.

It is stated in section 336 of Wharton's Criminal Law and Procedure (1957) discussing simple assault that, "There is a conflict as to whether criminal assault can be committed where the aggressor does not have the present ability to inflict injury on the person assailed" (cf. 5 C. J., Assault and Battery, § 188, p. 725). As indicated above, certain States have statutes requiring present ability so that in those States the pointing of an unloaded gun would not be an assault (e.g., *People* v. *Sylva,* 143 Cal. 62; *Klein* v. *State,* 9 Ind. App. 365). Courts in other States have imposed the requirement of present ability and found no assault in such cases — *State* v. *Godfrey* (17 Ore. 300), *Chapman* v. *State* (78 Ala. 463) and *Luitze* v. *State* (204 Wis. 78).

On the other hand there are quite a few States in which it has been held that apparent ability is sufficient at least for simple assault. In *State* v. *Wiley* (52 S. D. 110) under a factual situation very close to the instant case, the defendant was charged with assault with a dangerous weapon and convicted of simple assault. There the defendant approached a car in which a man and wife were sitting and pointed a shotgun in a threatening manner. He testified that the gun was not loaded. (See, also, *State* v. *Mier,* 74 S. D. 515.) In *Price* v. *United States* (156 F. 950) the defendant who had pointed an unloaded pistol in a threatening manner was convicted of assault with a deadly weapon and this conviction was reversed. The court said (p. 952): "And it is perfectly clear that an unloaded pistol, when used in the manner shown by the evidence in this case, is not, in fact, a dangerous weapon. If the defendant had struck or attempted to strike with it, the question whether it was or was not a dangerous weapon in the manner used, or attempted to be used, would be one of fact; but the courts quite uniformly hold as a matter of law that an unloaded

pistol, when there is no attempt to use it otherwise than by pointing it in a threatening manner at another, is not a dangerous weapon.

"But, while the evidence does not show that the defendant committed the crime of an assault with a dangerous weapon, it is yet sufficient to prove him guilty of the minor offense of assault."

The following additional cases have held that the pointing of an unloaded gun constitutes a simple assault — *Crumbley* v. *State* (61 Ga. 582); *State* v. *Shepard* (10 Iowa 126); *State* v. *Archer* (8 Kan. App. 737); *State* v. *Smith* (21 Tenn. 457); *Commonwealth* v. *White* (110 Mass. 407). A Maryland court recently pointed out that: "Since the right protected is that of the person atacked, the secret intention of the wrongdoer not to perform the threatened act, or even his undisclosed inability to perform it, is not a legal excuse in a civil action. The criminal law is also designed to protect right of the general public and the individual assailed, not merely to fix the moral guilt of the assailant." (*Hayes* v. *State*, 211 Md. 111, 115.)

Based on the New York cases as cited above, although dicta, an analysis of the cases of other jurisdictions and the reasoning therein, and the historical development in connection therewith, it would seem that the use and adoption of the apparent ability rule, the so-called modern rule, in regard to simple assault is proper.

The judgment of conviction should be reversed and a new trial ordered upon the ground that the record does not sustain a conviction of assault in the second degree but a jury might find defendant guilty of assault third degree following a proper charge.

HERLIHY, J. (dissenting). The opinion in which the majority concur, while stating it refers to the facts in the present case, is in reality holding and deciding that the pointing of an unloaded weapon at another does not, as a matter of law, constitute assault in the second degree. After so concluding, it is suggested that such an act might be sufficient to sustain a simple assault or as classified under the Penal Law, assault in the third degree.

In the present case the complainants, husband and wife, had taken the defendant's wife, who was living separate from him, to visit their children and while complainants' car was parked in front of the residence defendant came to the car pounding on the windows, using abusive and threatening language. To avoid trouble complainants left, went down the road, drove

into a driveway to turn around when their car was blocked by the car of the defendant who thereafter came again to the car of the complainants, again used threatening and abusive language, went to his car and returned with what appeared to be a sawed-off shotgun, pointed it at complainants and said, "you see this, I will get you yet". After a short time he lowered the gun, returned to his car and drove away. That the complainants were put in fear is shown by the statement of Mrs. Woolever as follows: "We were very alarmed" and "When you look at a gun, it seems like an eternity, when you are looking at the wrong end." Both of the complainants testified they did not know whether the gun was loaded and defendant testified it was not loaded. Under the peculiar circumstances in this case the defendant is the only one who would have such knowledge.

There are several reasons to suggest that the Legislature intended that the pointing of a gun in a threatening and suggestive manner came within the purview of subdivision 4 of section 242 and constituted a prima facie case under that section which provides:

" A person who    *    *    *

" 4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm    *    *    *."

There is a decided difference in the above wording when compared to assault first as defined by section 240:

" A person, who, with an intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another:

" 1. Assaults another with a loaded fire arm    *    *    *."

Admittedly subdivision 4 of section 242 requires no actual physical hurt or injury. Its terms should be satisfied when a person by the use of a weapon or other thing likely to produce grievous bodily harm threatens to inflict such harm upon another and appears to be capable of doing so.

That does not necessarily mean that the person so charged will be found guilty but does make it a factual and not a legal question as determined by the majority herein.

Assault has been defined as " an intentional attempt, displayed by violence or threatening gesture, to do injury to, or commit a battery upon, the person of another. A battery is a wrongful physical contact with the person of another ". (3 N. Y. Jur., Assault and Battery, p. 230.)

" An assault may be committed without physical contact with the person of the one assaulted, but a battery, which is necessarily the consequence of an assault, can be accomplished only by an actual touching of the person of another ". (3 N. Y. Jur., Assault and Battery, p. 231.) (See, also, 4 Am. Jur., Assault and Battery, pp. 124–125.)

The majority opinion relying heavily upon *People* v. *Katz* (290 N. Y. 361) holds that an intent is necessary on the part of the defendant, and that in the particular case here considered the request by counsel for the defendant to charge in that respect and its refusal by the court constituted reversible error.

It seems to me that the act herein speaks for itself. The raising up a gun is a sufficient act accompanied by the circumstances — pointing at complainants and using threatening language — to demonstrate an intention on the part of the defendant *likely* to produce grievous bodily harm, and whether the gun was or was not loaded is a matter of defense and must be proven by the defendant. Here that fact was solely within the knowledge of the defendant and it would be imposing an unreasonable duty to require the People to show defendant's intent when he pointed a gun at another in a threatening manner accompanied by threatening language. The indictment herein did not use the word " intent ". In *People* v. *Katz* the case involved the commission of a crime under subdivision 3 of section 242 and not subdivision 4, but in any event in my opinion the theory of the dissenting opinion as to the necessity of intent was correct.

There appear to be no recent cases dealing with this particular proposition, but the theory here advocated was sustained in earlier cases. (See *People* v. *Morehouse,* 53 Hun 638, opinion in 6 N. Y. S. 763; *People* v. *Ryan,* 55 Hun 214; *People* v. *McKenzie,* 6 App. Div. 199.) In *People* v. *Legacy* (4 A D 2d 453) the defendant was indicted for robbery first and convicted of robbery third, the principal question involved whether a pistol was real or a toy gun as claimed by defendant. This question was submitted to the jury as part of the proof essential to the commission of the crime charged.

It is, therefore, my opinion that the present nefarious facts constituted a prima facie case of assault second degree · in accordance with subdivision 4 and that the jury in considering the testimony of the defendant that the gun was not loaded — a factual question — had a right to determine the question based upon his credibility and his interest in the outcome of the trial. Under such circumstances a jury would always have the right to find the defendant guilty of a lesser crime or of no crime,

but to say that the circumstances here do not constitute a prima facie case of assault in the second degree as a matter of law is error. With the prevalence of heinous, vicious and brutal crimes in ever increasing numbers such an interpretation can and will be a great detriment to proper law enforcement.

Under the circumstances, it was not error for the court to refuse to charge as requested by the attorney for the defendant and while the charge itself conceivably could have been in more factual detail and further explanation of the law, there being no objection by the defendant to that part thereof, I vote to affirm.

BERGAN, P. J., COON and GIBSON, JJ., concur with REYNOLDS, J.; HERLIHY, J., dissents, in an opinion, and votes to affirm.

Judgment of conviction reversed, on the law and the facts, and a new trial ordered upon the ground that the record does not sustain a conviction of assault in the second degree.