The STATE of Utah, Plaintiff and Respondent,

v.

Parley Edward NIELSEN, Defendant and Appellant.

No. 14173.

Supreme Court of Utah.

Dec. 15, 1975.

Gary H. Weight, of Aldrich & Nelson, Provo, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

HENRIOD, Chief Justice:

Appeal from a conviction at a jury trial of a class A misdemeanor under Title 76–10–503, Utah Code Annotated 1953 (1975 Pocket Supp., Vol. 8, p. 172) for 1) having possession of a dangerous weapon, 2) after having been convicted previously of a crime of violence,—with no quarrel as to 2). Affirmed.

The jury was out 20 minutes, after having heard testimony supportive of its verdict, abbreviated as follows:

Defendant was paroled after commitment for a crime of violence. He indulged an argument with one Adams at a lounge, and requested a friend, Smith, to take him home. At home he changed clothes and returned to the lounge with Smith, who said defendant had a gun clip (which was stipulated would not be probative of the charge). The owner of the lounge said he saw defendant in possession of what he thought was a gun. A patron said he saw a gun in defendant's hand. Another patron said she saw the gun in his hand and that Nielsen told the lounge owner if he called the police he would kill him. Several defense witnesses said they saw no gun.

The defendant urges that the trial court erred 1) in giving Instructions 6 and 7 and in 2) denying defendant's requested Instruction No. 1.

Instructions 6 and 7 were to the effect that to convict defendant beyond a reasonable doubt, he must have "had a gun in his possession" and that "a pistol-type handgun is a dangerous weapon" under the law, but that a "gun clip alone with or without cartridges is not a dangerous weapon."

Defendant urges that the instruction should have said "dangerous weapon" instead of "gun," since Section 76–10–501 of the statute defines the former as "any item that in the manner of use *or intended use* is capable of causing death or serious bodily injury,"—and that consequently, the jury, according to defendant, "could have concluded that the defendant either had a magazine with unexpired cartridges, a clip for a handgun, or a pistol-type gun,"—the implication being that the first two mentioned "items" would not qualify as "dangerous weapons." Difficulty with such argument is that 1) the jury obviously did *not* conclude the defendant possessed only a magazine or a clip, but 2) concluded that he held a "gun." By any kind of syllogistic reasoning, the instruction was more favorable to defendant than not, since the jury was restricted to and required to find defendant had a "gun" and not some other "item" that may or may not have been a "dangerous weapon." Had they found that he possessed any item other than a "gun" that actually *did* constitute a "dangerous weapon," nonetheless the jury, under the instructions would have been required to acquit him and the State and the Court would have been stuck with an instruction more restrictive than need it have been— more to the advantage of defendant. It seems difficult to understand how the defendant could complain under such an atmosphere of favorability. We believe the statute's purpose was to deter those convicted of violent crimes from thereafter having guns, loaded or unloaded.

The instruction requested by defendant and denied by the Court was pretty much consonant with the statute and sufficiently covered by other instructions of the Court, as not to be categorized as one whose failure to give would have constituted reversible error.

CROCKETT and TUCKETT, JJ., concur.

MAUGHAN, Justice (dissenting):

For the following reasons I dissent:

Defendant was convicted for violation of 76–10–503, U.C.A.1953, as amended, 1973. Defendant had previously been convicted of a crime of violence, and the pertinent words of the statute which apply to this defendant are that he "shall not own or have in his possession or under his custody or control any dangerous weapon as defined in this part." We deal here only with a crime of possession, custody, or control. 76–10–501 defines a dangerous weapon as follows:

(1) "Dangerous weapon" means any item that in the manner of its use or intended use is capable of causing death or serious bodily injury.

These statutes are a part of the new criminal code enacted by the legislature in 1973. The matter here on appeal is one of first impression involving the subject statutes.

Error is assigned because the trial court did not instruct in the terms of the statute but charged that to convict defendant beyond a reasonable doubt he must have had "a gun in his possession" and that "a pistol-type handgun is a dangerous weapon" under the law, and that a "gun clip alone with our without cartridges is not a dangerous weapon." The error here is that the instructions are not responsive to the statutes. The statute does not proscribe the possession of a gun, nor does it define a pistol-type handgun as a dangerous weapon. It does proscribe the possession of a dangerous weapon, and a dangerous weapon is therein described. The description of a "dangerous weapon" renders an unloaded pistol, or one otherwise incapable of firing not a dangerous weapon.[1] It appears clear that an unloaded pistol or one otherwise incapable of firing is not capable of causing death or serious bodily injury; unless the manner of its use or intended use was that of a club or bludgeon. Here there is no evidence of the use or intended use of the gun the jury found the defendant had in his possession. Under the instruction the jury found only that defendant had a gun in his possession—this is not sufficient under the subject statutes.

Other sections of part 5, chapter 10, serve to illuminate the sections under consideration. 76–10–502 sets forth the circumstances under which "any pistol, revolver, shotgun, rifle, or other weapon described in this part shall be deemed to be loaded." 76–10–505 proscribes the carrying of a *loaded* firearm in a vehicle or on any public street within a prohibited area.

An unloaded gun, or one otherwise incapable of being fired, could be a dangerous weapon if its possessor also had at hand the means to load it or restore its efficiency, that its originally intended use could be put into operation.

Other courts, applying similar statutes in similar fact situations have reached the same conclusion advanced in this dissent. In *People v. Jackson* [2] the court said:

It is not a violation to carry a pistol that is so broken or out of repair that it cannot be used to shoot with or cannot be fired.

\* \* \* \* \* \*

We do not question the rule that "a deadly weapon" does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment if the parts may be easily assembled so as to be effective.

And in *State v. Haugabrook*[3] the court there dealt with a defendant who was charged with carrying a concealed weapon. Defendant was apprehended for investigation of attempted burglary. During a routine search of his vehicle a .22 caliber pistol, unloaded, was found in the glove compartment of his automobile. The search discovered no ammunition for the pistol. The court's conclusion was:

Statutory construction requires this court to consider that the legislature intended for the possession of a loaded gun or pistol to be a felony; while possession of an unloaded gun or pistol is not to be considered a crime.

In the matter of *Luitze v. State* [4] defendant was convicted of aiding an assault and

1. For an able discussion of this question see *People v. Wood*, 10 A.D.2d 231, 199 N.Y.S.2d 342; and 79 A.L.R.2d 1412, 1423, Sec. 6.

2. 266 Cal.App.2d 341, 72 Cal.Rptr. 162 (1968).

3. 272 N.E.2d 213 (Ohio Cty.Ct.1971).

4. 204 Wis. 78, 234 N.W. 382, 74 A.L.R. 1202 (1931).

robbery while armed with a dangerous weapon. The conviction was reversed; the court said:

Defendant's contentions are based upon the established law of this state that an empty or unloaded revolver merely pointed at a person, and not used to strike with, is not a dangerous weapon no matter how much the person at whom it is pointed may be put in fear.

Had our legislature wanted to proscribe the possession of a "gun," by one who had formerly been convicted of a crime of violence it would simply have said so rather than to have proscribed the possession of a "dangerous weapon."

I would reverse for a new trial.

ELLETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.